US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JAN 09 2017

DOUGLAS F. YOUNG, Clerk
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| EUGENE BROWN and <br> SHARON VELAZQUEZ individually and on <br> behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SECURUS TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. 17-5008 <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

# INTRODUCTION

1. Plaintiffs Eugene Brown and Sharon Velazquez, individually and on behalf of all others similarly situated, bring this class action on behalf of the Classes defined below (*infra* at ¶ 25) asserting claims under the common law of unjust enrichment, the Arkansas Deceptive Trade Practices Act, Ark. Code. Ann. 4-88-101 *et seq.* ("Arkansas DTPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("Illinois CFDPA"), seeking restitution, costs of suit and other relief against Defendant Securus Technologies, Inc. ("Securus" or "Defendant") for its unjust and unreasonable conduct during the Class Period.[1]  Specifically, during the Class Period, Securus charged exorbitant rates and fees for inmate calling services ("ICS")—up to 100 times normal market rates—for inmate's *intrastate* telephone calls pursuant to exclusive contracts with correctional facilities throughout the United States in violation of the

---

[1] The term "Class Period" refers to the applicable statutes of limitations for each of Plaintiffs' claims. Accordingly, the Class Period for Plaintiffs' unjust enrichment claims begins on January 9, 2014. The Class Period for Plaintiffs' claims under the Arkansas DTPA begins on January 9, 2012. The Class Period for Plaintiffs' claims under the Illinois CFDPA begins on January 9, 2012.

1

applicable common law of unjust enrichment and state consumer protection laws of Arkansas and Illinois as alleged herein.

2.  The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## PARTIES

3.  Plaintiff Eugene Brown is a citizen of Arkansas who was incarcerated in the Mississippi County Detention Center, located in Luxora, Arkansas, between September 2013 and June 2014. Plaintiff Brown was forced to pay Securus unjust, unreasonable, unfair and/or deceptive amounts for intrastate phone calls within Arkansas including rates that were inflated by Securus to cover the payment of commissions to correctional facilities in exchange for being awarded exclusive ICS provider contracts. Plaintiff Brown is willing and able to serve as a class representative.

4.  Plaintiff Sharon Velazquez is a former citizen of Illinois who has a family member who was incarcerated in multiple Illinois Department of Corrections ("IDOC") facilities including: (1) Pontiac Correctional Center located in Pontiac, Illinois, and (2) Menard Correctional Center located in Menard, Illinois, for various periods of time between 2005 through 2015. Plaintiff Velazquez was forced to pay Securus unjust, unreasonable, unfair and/or deceptive amounts including rates for intrastate phone calls within Illinois which were inflated by Securus to cover the payment of commissions to correctional facilities in exchange for being awarded exclusive ICS provider contracts. Plaintiff Velazquez also paid unjust and unreasonable deposit fees each time she funded her prepaid AdvanceConnect account with a credit card.

2

Plaintiff Velazquez began residing in Indiana on April 1, 2015. Plaintiff Velazquez is willing and able to serve as a class representative.

5. Securus is a privately held corporation headquartered in Dallas, Texas that provides managed telecommunications services at federal, state, and local correctional facilities in Arkansas and Illinois and throughout the United States. By using these services, inmates can communicate with family members, friends, attorneys, and other approved persons outside the correctional facilities.

6. Securus was formed through the 2004 acquisition of Evercom Systems, Inc. ("Evercom") and T-Netix, Inc. ("T-Netix") by H.I.G. Capital, LLC, a Miami-based private equity firm with more than $1 billion of equity capital under management. Securus's predecessors consolidated a large portion of the industry through the acquisition of several inmate telephone service providers across the United States in the late 1990s.

7. Securus provides and/or has provided ICS pursuant to contracts with forty-six states (including, in Illinois, a contract with the IDOC dated October 19, 2012 continuing through June 30, 2017,) as well as contracts with counties and municipalities across the United States (including counties in Arkansas) during the Class period. Securus serves and/or has served approximately 2,200 correctional facilities in forty-six states (including in Arkansas and Illinois) and more than 1.2 million inmates nationwide.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one Class Member is a citizen of a state other than that of Securus.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that Securus transacts substantial business within, and is subject to personal jurisdiction in, this District and thus "resides" in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted herein took place in this District.

## DEFENDANT'S UNLAWFUL CONDUCT

10. Inmates are literally a captive market for Securus, which provides pay telephone services in prisons, jails, and other correctional facilities. As noted by the Federal Communications Commission (the "FCC"), there are no competitive market forces to constrain the prices set by Securus.[2]

11. Securus has secured for itself the right to provide telephone services to hundreds of thousands of inmates through exclusive contracts with thousands of correctional facilities.[3] As a result of the monopolies created by these exclusive contracts, Securus faces little or no competition to challenge increasing telephone rates.[4]

12. In return for this monopoly power, Securus provides kickbacks which are formally referred to as "site commissions," and also frequently referred to as concession fees, administration fees and other payments to the contracting parties and/or facilities. By way of example, Securus paid an 87.1% commission under the contract covering IDOC facilities during

---

[2] *See In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept. 26, 2013) ("*Interstate Inmate Calling Servs. I*").

[3] Securus represents with respect to its ICS that it uses an internet protocol format to send inmate-initiated communications services through the entire course of the call until delivered to the terminating landline or wireless carrier. This is commonly referred to as Voice over Internet Protocol ("VoIP").

[4] *See* FCC Opp. p.3 (stating that "each provider is a monopoly in a given facility").

4

the Class Period.[5] Securus pays concession fees to many state and county run correctional facilities. Securus pledged to pay Mississippi County, Arkansas more than 53% of revenue generated from inmate telephone calls in exchange for being the exclusive provider of ICS to Mississippi County jails. As a result of the absence of competition, "[f]amilies of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for their basic monthly phone service."[6]

13. Securus charges vastly more than market rates for inmates' intrastate calls within the United States, as well as exorbitant, unreasonable, unjust, unfair, and/or deceptive Ancillary Charges that lack any reasonable relationship to Securus's intrastate calling costs.[7]

14. The total payments of kickbacks in the form of site commissions (often referred to as concession fees, administrative fees and other payments) made by Securus to the correctional facilities it services have exceeded hundreds of millions of dollars. Securus's Chief Executive

---

[5] https://www.prisonphonejustice.org/media/phonejustice/Illinois_20122013_Securus_Phone_Contract.pdf

[6] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. At 14130.

[7] The FCC defines "Ancillary Charges" as "fees charged to ICS end users [anyone who pays for and uses inmate calling services] such as, but not limited to, a charge for the establishment of debit and prepaid accounts for inmates in facilities served by the ICS provider or those inmates' called parties; a charge to add money to those established debit or prepaid accounts; a charge to close debit or prepaid accounts and refund any outstanding balance; a charge to send paper statements to ICS end users; a charge to send calls to wireless numbers; fees characterized as "regulatory recovery fees," penalty charges assessed on the account for perceived three-way calling or other perceived violations of the security provisions mandated by the correctional facility; and other charges ancillary to the provision of communication services." *See* https://apps.fcc.gov/edocs_public/attachmatch/DOC-327664A1.pdfhttps://apps.fcc.gov/edocs_public/attachmatch/DOC-327664A1.pdf (last visited Dec. 20, 2016); see also 47 C.F.R. § 64.6000 (defining "Ancillary Charges").

Officer Rick Smith has stated that these kickbacks are "tremendously unfair ... [but] it's the nature of being in the business."[8]

15. During rulemaking proceedings governing interstate charges, the FCC investigated whether interstate charges were "unreasonably high, unfair, and far in excess of the cost of providing service."[9] The FCC concluded that they were, and that Securus and similar companies "exploited [their] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of Sections 201 and 276 of the Federal Communications Act that those rates be just, reasonable, and fair."[10] Likewise, the FCC has concluded that "[it] believe[s] the same legal and policy concerns identified in the Order apply equally with regard to high *intrastate* rates."[11]

16. More particularly, during the rulemaking proceedings regarding the rates and fees associated with ICS, the FCC concluded that:

- Under existing law, commission payments to correctional facilities are profit-sharing kickback arrangements and "are not a ... category of ... costs" recoverable from end-users in the rates charged for interstate telephone calls. *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14135-37.

- Because correctional facilities grant the monopoly franchise partly on the basis of the commission payment offered, "competition" among providers produces increased commission payments and higher end-user charges. *See id.* at 14129.

---

[8] Markowitz, Eric "Amid Death Threats, An Embattled Prison Phone Company CEO Speaks Out" The International Business Times Jan. 26, 2016, http://www.ibtimes.com/amid-death-threats-embattled-prison-phone-company-ceo-speaks-out-2 276551 (last visited Dec. 21, 2016).

[9] *In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Fcd 15927, 15929 (F.C.C. Nov. 21, 2013) ("*Interstate Inmate Calling Servs. II*").

[10] FCC Op., at p. 1.

[11] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. At 14174 (emphasis added).

- Inmate telephone rates have "inflict[ed] substantial and clear harm on the general public (and not merely on private interests)" and must be rejected under existing legal precedent. *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15938.

- With regard to certain per call charges, "[t]he record indicates these per call charges are often extremely high and therefore, unjust, unreasonable and unfair for a number of reasons." *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14154-55.

- "*[F]or many years, interstate [inmate telephone service] rates have been unreasonably high, unfair, and far in excess of the cost of providing service.*" *Interstate Inmate Calling Servs. II.*, 28 FCC Rcd at 15929-30 (emphasis added). In regard to *intrastate* rates, the FCC has stated that: "[W]e conclude that competition and market forces have failed to ensure just, reasonable, and fair interstate ICS rates, and, for the same reasons, we tentatively conclude that the same failure has occurred for intrastate ICS rates as well." *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14174-75.

17. The FCC has further stated, "[f]or the same reasons we found that site commission payments are not part of the cost of providing interstate ICS, we tentatively conclude that site commissions should not be recoverable through intrastate rates[.]" *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14175.

18. In reference to the many Ancillary Charges assessed by Securus and other inmate calling service providers, the FCC has expressed its concern that assessments of Ancillary Charges "are not reasonably related to the cost of providing service."[12] The FCC noted that the charges for services ancillary to the provision of ICS result in "significant additional burdens on consumers and considerably inflate the effective price they pay for ICS,"[13] concluding that "[t]here is a broad consensus in the record on the need for the Commission to reform ancillary charges."[14]

---

[12] *Interstate Inmate Calling Servs. II*, 29 F.C.C. Fcd. at 13170, 13173.

[13] *Id.* at 13202.

[14] *Id.* at 13203.

19. As demonstrated above, the FCC has unequivocally determined that interstate ICS providers have, for many years, charged unjust and unreasonable rates in violation of the Federal Communications Act, 47 U.S.C. §§ 201 *et seq.* (the "FCA"), by incorporating commission payments by ICS providers to correctional facilities and other unjust and unreasonable fees and costs into their charges for interstate calls, and as the ICS Orders reflect, the same violative behavior and findings apply to intrastate calls.[15]

20. On June 16, 2014, the FCC implemented a Mandatory Data Collection to inform its evaluation of the costs of inmate calling services and reform options under the FCA. As part of that process, the FCC required all ICS providers to supply data regarding their costs of providing ICS, including information on the Ancillary Charges imposed on ICS end users.

21. The FCC's September 2013 and November 2013 orders did not create a new obligation for Securus; rather, they simply reiterated Securus's longstanding legal obligations – obligations that Securus violated throughout the Class Period.[16]

22. As a result of Securus's imposition of exorbitant, unfair, unjust, and/or unreasonable rates and Ancillary Charges for intrastate calls during the Class Period, Plaintiffs and members of the Classes defined below (*infra* at ¶ 25) have been damaged.

## TOLLING

23. On February 16, 2000, a class action complaint was brought against several inmate telephone service providers based on some of the conduct alleged herein.[17] That case remains

---

[15] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14173-78.

[16] *See Billed Party Preferences For Interlata 0+ Calls*, 13 FCC Rcd. 6122, 6156 (FCC Jan. 29, 1998) (finding that inmate telephone rates "must conform to the just and reasonable requirements of Section 201").

[17] *See Wright v. Corrections Corporation of America, et al.*, No. 00-cv-0293-GK (D.D.C.).

stayed. Additionally, current and former inmates petitioned the FCC as early as 2003 to address inmate telephone rates and the FCC has issued various rulings and pronouncements since then.

24. Securus has been on notice since as early as 2000 that its conduct was unlawful and the claims alleged herein are ripe for disposition.

## CLASS ALLEGATIONS

25. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 asserting claims under the Arkansas and Illinois consumer protection statutes and the common law of unjust enrichment on behalf of themselves and the following state and multistate Classes of those similarly situated (hereinafter collectively, the "Classes"):

> a) Plaintiff Eugene Brown brings this action on behalf of himself and the two classes that include the following individuals:
>
> > 1) All persons in Arkansas who, at any time within the applicable limitations period: (1) paid to use inmate calling services provided by Securus (including its operating subsidiaries) to make or receive one or more intrastate phone calls from a correctional facility in Arkansas during a period of time when Securus paid the facility a commission of any type in connection with the intrastate calls; and/or (2) paid deposit fees to Securus in order to fund a prepaid account used to pay for any intrastate calls; and/or (3) paid other Ancillary Charges in connection with any intrastate calls (the "Arkansas Class"); and
>
> > 2) All persons who, while residing in Arkansas, California, Connecticut, Hawaii, Iowa, Indiana, Michigan, Nebraska, New Hampshire, South Carolina, Vermont, and West Virginia, at any time within the applicable limitations period: (1) paid to use inmate calling services provided by Securus (including its operating subsidiaries) to make or receive one or more intrastate phone calls from a correctional facility during a period of time when Securus paid the facility a commission of any type in connection with the intrastate calls; and/or (2) paid deposit fees to Securus in order to fund a prepaid account used to pay for any intrastate calls; and/or (3) paid other Ancillary Charges in connection with any intrastate calls (the "Multistate UE Class I").

b) Plaintiff Velazquez brings this action on behalf of herself and the two classes that include the following individuals:

1) All persons in Illinois who, at any time within the applicable limitations period: (1) paid to use inmate calling services provided by Securus (including its operating subsidiaries) to make or receive one or more intrastate phone calls from a correctional facility in Illinois during a period of time when Securus paid the facility a commission of any type in connection with the intrastate calls; and/or (2) paid deposit fees to Securus in order to fund a prepaid account used to pay for any intrastate calls; and/or (3) paid other Ancillary Charges in connection with any intrastate calls (the "Illinois Class"); and

2) All persons who, while residing in Illinois, Arizona, Colorado, Delaware, Louisiana, Massachusetts, North Dakota, New Jersey, Oklahoma and Texas, at any time within the applicable limitations period: (1) paid to use inmate calling services provided by Securus (including its operating subsidiaries) to make or receive one or more intrastate phone calls from a correctional facility during a period of time when Securus paid the facility a commission of any type in connection with the intrastate calls; and/or (2) paid deposit fees to Securus in order to fund a prepaid account used to pay for any intrastate calls; and/or (3) paid other Ancillary Charges in connection with any intrastate calls (the "Multistate UE Class II").

26. This action is brought and properly may be maintained as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

27. The members of the Classes are so numerous that individual joinder of all the members is impracticable. On information and belief, there are many thousands of persons who have been affected by Securus's conduct. The precise number of Members of the Classes is presently unknown to Plaintiffs, but may be ascertained from Securus's books and records. The members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

28. Common questions of law and fact exist as to the Classes, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions that affect only individual Members of the Classes within the meaning of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact include, but are not limited to, the following:

(a) whether it is unjust and unreasonable for Securus to inflate ICS rates to pay commissions to correctional facilities for which it is the exclusive provider of ICS;

(b) whether Securus has charged intrastate ICS rates and Ancillary Charges that unreasonably exceed costs of providing intrastate service;

(c) whether, through the acts and practices complained of herein, Defendant was unjustly enriched; and

(d) whether, through the acts and practices complained of herein, Securus committed unfair and/or deceptive business practices;

(e) whether, through the acts and practices complained of herein, Defendant has violated the Arkansas DTPA;

(f) whether, through the acts and practices complained of herein, Securus has violated the Illinois CFDPA;

(g) whether Plaintiffs and the Classes have been damaged by Securus's acts and practices complained of herein, and if so, the measure of those damages and the nature and extent of any other relief that should be granted.

29. Plaintiffs' claims are typical of the claims of the Classes they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and the members of the Classes have been subjected to the same wrongful practices and have been damaged thereby in the same manner.

30. Plaintiffs will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Classes because they have no interests that are adverse to the interests of the Classes. Plaintiffs are committed to the vigorous prosecution of this action and to that end Plaintiffs have retained

counsel who are competent and experienced in handling class action litigation on behalf of consumers.

31. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and each Member of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Securus, so it would be impracticable for each Member of the Classes to individually seek redress for Securus's wrongful conduct. Even if Members of the Classes could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

32. In the alternative, this action is certifiable under the provisions of Fed. R. Civ. P. 23(b)(1) because:

    (a)    the prosecution of separate actions by individual Member of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Member of the Classes that would establish incompatible standards of conduct for Securus; and

    (b)    the prosecution of separate actions by individual Member of the Classes would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interests of the other Member of the Classes not parties to the adjudications or substantially impair or impede their ability to protect their interests.

33. In the alternative, this action is certifiable under the provisions of FED. R. CIV. P. 23(b)(2) because Securus has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to the Classes as a whole and necessitating that any such relief be extended to Members of the Classes on a mandatory, class wide basis.

34. Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class action.

## COUNT I
## UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFF BROWN AND THE MULTISTATE UE CLASS I)

35. Plaintiff Brown and Members of the Multistate UE Class I hereby incorporate by reference paragraphs 1-34 of this Complaint as if fully set forth herein.

36. Securus's conduct as described herein constitutes Unjust Enrichment, for which Plaintiff Brown and Members of the Multistate UE Class I are entitled to pursue equitable remedies under the common law.

37. As a direct and proximate result of Securus's acts and practices alleged herein, Securus has been unjustly enriched and has obtained money, earnings, profits, and benefits directly from Plaintiff Brown and the Multistate UE Class I to which Securus is not otherwise entitled and which it would not have obtained but for unreasonably charging Plaintiff Brown and Members of the Multistate UE Class I amounts to cover kickbacks and other exorbitant and/or unreasonable charges in order to reap unjust profits.

38. Securus's practices were intentional, knowing, malicious, and/or done with the intent to reap significant benefits at the expense of Plaintiff Brown and Members of the Multistate UE Class I. Securus is not entitled to this enrichment and obtained this enrichment to the detriment of Plaintiff Brown and Members of the Multistate UE Class I.

39. Plaintiff Brown and Members of the Multistate UE Class I have suffered, and will continue to suffer, damages as a result of Securus's unjust retention of proceeds from their acts and

practices alleged herein and are entitled to pursue civil claims for restitution of the amounts charged to unjustly enrich Securus as alleged above.

40. Under principles of equity and justice, Securus should be required to restore the above-described unjust enrichment to Plaintiff Brown and Members of the Multistate UE Class I in amounts to be determined at trial.

## COUNT II
## UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFF VELAZQUEZ AND THE MULTISTATE UE CLASS II)

41. Plaintiff Velazquez and Members of Multistate UE Class II hereby incorporate by reference paragraphs 1-34 of this Complaint as if fully set forth herein.

42. Securus's conduct as described herein constitutes Unjust Enrichment, for which Plaintiff Velazquez and Members of the Multistate UE Class II are entitled to pursue equitable remedies under the common law.

43. As a direct and proximate result of Securus's acts and practices alleged herein, Securus has been unjustly enriched and has obtained money, earnings, profits, and benefits directly from Plaintiff Velazquez and Members of the Illinois Class to which Securus is not otherwise entitled and which it would not have obtained but for unreasonably charging Plaintiff Velazquez and Members of the Multistate UE Class II amounts to cover kickbacks and other exorbitant and/or unreasonable charges in order to reap unjust profits.

44. Securus's practices were intentional, knowing, malicious, and/or done with the intent to reap significant benefits at the expense of Plaintiff Velazquez and Members of the Multistate UE Class II. Securus is not entitled to this enrichment and obtained this enrichment to the detriment of Plaintiff Velazquez and Members of the Multistate UE Class II.

45. Plaintiff Velazquez and Members of the Multistate UE Class II have suffered, and will continue to suffer, damages as a result of Securus's unjust retention of proceeds from their acts and practices alleged herein and are entitled to pursue civil claims for restitution of the amounts charged to unjustly enrich Securus as alleged above.

46. Plaintiff Velazquez and Members of the Multistate UE Class II have no alternative adequate remedy at law to recover the proceeds unjustly retained by Securus.

47. Under principles of equity and justice, Securus should be required to restore the above-described unjust enrichment to Plaintiff Velazquez and Members of the Multistate UE Class II in amounts to be determined at trial.

## COUNT III
## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, Ark. Code Ann. §4-88-101 ET. SEQ.
## (ON BEHALF OF THE ARKANSAS CLASS)

48. Plaintiff Brown hereby incorporates by reference paragraphs 1-34 of this Complaint as if fully set forth herein.

49. Plaintiff Brown brings this claim on his own behalf and on behalf of each member of the Arkansas Class against Securus.

50. Securus's actions described in this complaint violate the Arkansas DTPA.

51. Securus violated Section 4-88-107(a)(8) of the Arkansas DTPA which prohibits "[k]nowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of: (A) Physical Infirmity; (B) Ignorance; (C) Illiteracy; (D) Inability to understand the language of the agreement; or (E) A similar factor." Securus knowingly took advantage of Plaintiff Brown and Members of the Arkansas Class who were unable to protect their interest because (as known to Securus) Plaintiff Brown and Members of the Arkansas Class were a

captive market for Securus's services and had no ability to choose a provider who did not pay kickbacks and impose unconscionable charges when making or receiving a call involving an incarcerated person. As a direct result of Securus's violation of the Arkansas DTPA, Plaintiff Brown and Members of the Arkansas Class have suffered damages, including being forced to fund the kickback payments and charged unconscionable fees.

52. Securus violated Section 4-88-107(a)(10) which prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Under the circumstances presented by this case, Securus engaged in an "unconscionable, false, or deceptive act" by including amounts to fund kickbacks and for exploitive, improper and/or undisclosed fees and charges in the amounts collected from Plaintiff Brown and Members of the Arkansas Class for intrastate phone services. As a direct result of Securus's violation of the Arkansas DTPA, Plaintiff Brown and Members of the Arkansas Class have suffered damage as a result of unwittingly being charged to fund the kickback payments and pay for exploitive fees and charges.

53. Plaintiff Brown and Members of the Arkansas Class are entitled to pursue civil claims for relief or recover compensation for their damages in the amount of the unjust and unreasonable rates and charges imposed as a result of the exploitive and/or improper conduct as alleged above, and for the costs and reasonable attorney fees incurred with regard to bringing this action pursuant to Ark. Code Ann. § 4-88-113(f).

**COUNT IV**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, ET SEQ.**
**(ON BEHALF OF THE ILLINOIS CLASS)**

54. Plaintiff Velazquez hereby incorporates by reference paragraphs 1-34 of this Complaint as if fully set forth herein.

55. Plaintiff Velazquez bring this claim on their own behalf and on behalf of each member of the Illinois Class against Securus.

56. Securus is a "person" as that term is defined in 815 ILCS 505/1(c).

57. Plaintiff Velazquez and Members of the Illinois Class are "consumers" as the term is defined in 815 ILCS 505/1(e).

58. The Illinois CFA provides, in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices … in the conduct of trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby …." 815 ILCS 505/2.

59. Securus's business practices alleged herein are unfair and/or deceptive acts or practices and, thus, constitute multiple, separate and independent violations of 815 ILCS 505/1, *et seq.* These wrongful acts and practices include, without limitation:

   (a) Inflating ICS rates to cover the payments of commissions to the correctional facilities for which Securus was the exclusive provider of ICS;

   (b) Charging Plaintiff Velazquez and Members of the Illinois Class unreasonable and unjust telephone rates and Ancillary Charges for ICS that Securus provided pursuant to its exclusive contracts with correctional facilities;

   (c) Utilizing its position as the exclusive provider of ICS to charge Plaintiff Velazquez and Members of the Illinois Class telephone rates and Ancillary Charges that unreasonably exceed costs of providing intrastate ICS; and

   (d) Engaging in other unfair or unlawful conduct as described in this Complaint.

60. Securus engaged in these unfair and/or deceptive acts or practices in the conduct of business, trade, or commerce in the State of Illinois.

61. Securus knew or should have known that its conduct violated the Illinois CFA.

62. Securus's unfair and/or deceptive acts or practices alleged herein constitute consumer-oriented conduct in that Securus's deceptive acts or practices were directed to, and affected, ICS consumers, including Plaintiff Velazquez and Members of the Illinois Class.

63. Plaintiff Velazquez and Members of the Illinois Class suffered ascertainable loss cause by Securus's unfair conduct.

64. Securus's unfair and/or deceptive acts or practices alleged herein have a broad, adverse impact on consumers, including Plaintiff Velazquez and Members of the Illinois Class.

65. Securus's unfair and/or deceptive acts or practices alleged herein are part of a pattern of conduct by Securus, are ongoing, and are likely to continue to harm the public and frustrate the public interest in just and reasonable telephone rates and charges.

66. Securus's unfair and/or deceptive acts or practices alleged herein are material in that they related to matters that would reasonably be expected to be important to a reasonable consumer in making his or her decision whether to do business with Securus.

67. As a direct and proximate result of Securus's violations of the Illinois CFA, Plaintiff Velasquez and Members of the Illinois Class have suffered injury-in-fact and/or actual damages.

68. Plaintiff Velasquez and Members of the Illinois Class seek an order enjoining Securus's unfair and/or deceptive acts or practices, and for punitive damages, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Securus and in favor of Plaintiffs and the Classes, and award the following relief:

(a) Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), or (b)(3) on behalf of the Classes as defined above;

(b) Declaration, judgment, and decree that the conduct alleged herein:

- Constitutes an unreasonable and unlawful act;
- Unjustly enriched Securus;
- Violates the Arkansas DTPA;
- Violates the Illinois CFDPA; and

(c) Damages to Plaintiffs and the Classes to the maximum extent allowed under state and federal law;

(d) Costs and disbursements of the action;

(e) Restitution and/or disgorgement of Securus's ill-gotten gains;

(f) Pre- and post-judgment interest;

(g) Reasonable attorneys' fees; and

(h) Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable.

Dated: January 9, 2017

Respectfully Submitted,

AMY C. MARTIN

Amy C. Martin
P.O. Box 765
Fayetteville, AR 72702
Telephone: (479) 422-4611
theamymartin@gmail.com

**KESSLER TOPAZ
   MELTZER & CHECK, LLP**
Peter A. Muhic
(*Pro Hac Vice to be filed*)
Donna Siegel Moffa
(*Pro Hac Vice to be filed*)

Amanda R. Trask
(*Pro Hac Vice to be filed*)
Monique Myatt Galloway
(*Pro Hac Vice to be filed*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
pmuhic@ktmc.com
eciolko@ktmc.com
dmoffa@ktmc.com
atrask@ktmc.com
mgalloway@ktmc.com

**BERGER & MONTAGUE, P.C.**
Daniel Berger (*Pro Hac Vice to be filed*)
Peter R. Kahana (*Pro Hac Vice to be filed*)
Barbara A. Podell (*Pro Hac Vice to be filed*)
Yechiel Michael Twersky (*Pro Hac Vice to be filed*)
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
danberger@bm.net
pkahana@bm.net
bpodell@bm.net
mitwersky@bm.net

*Attorneys for Plaintiffs and the Proposed Class*