IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PATRICK ANTOON, JR.,
SHALIN MILLER, and
SHARON VELAZQUEZ                                                    PLAINTIFFS

V.                    CASE NO. 5:17-CV-5008

SECURUS TECHNOLOGIES, INC.                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Securus Technologies, Inc.'s ("Securus") Motion to Dismiss and Motion to Strike Class Allegations (Doc. 30) and Memorandum in Support (Doc. 30-1), Plaintiffs Patrick Antoon, Jr.'s, Shalin Miller's, and Sharon Velazquez's Response in Opposition (Doc. 35), and Securus's Reply in Support (Doc. 38). Also currently before the Court are Securus's Motion for Stay of Discovery (Doc. 39) and Memorandum in Support (Doc. 39-1), Plaintiffs' Opposition (Doc. 47), and Securus's Reply in Support (Doc. 49). For the reasons given below, Securus's Motion to Dismiss and Strike is **GRANTED IN PART AND DENIED IN PART**, and Securus's Motion for Stay is **DENIED**.

### I. BACKGROUND

This lawsuit is a putative class action. Securus provides inmate telephone calling services ("ICS") at correctional facilities throughout the United States. Plaintiff Antoon is an Arkansas citizen who has been incarcerated in Arkansas since March 2014. Plaintiff Miller is a resident of Georgia with loved ones who were incarcerated in Georgia from January 2015 to September 2015 and from June 2016 through October 2016. Plaintiff

1

Velazquez is a resident of Missouri and former resident of Illinois, with a family member who was incarcerated in Illinois from roughly mid-2005 to 2015. Plaintiffs bring claims for unjust enrichment against Securus under the common law of Arkansas, Georgia, and Illinois, respectively. Plaintiffs also bring claims, respectively, against Securus under the Arkansas Deceptive Trade Practices Act ("ADTPA"), the Georgia Fair Business Practice Act ("GFBPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA").

Plaintiffs all allege that Securus obtained exclusive contracts with correctional facilities to provide ICS, and then exploited those exclusive contracts by charging Plaintiffs exorbitant rates and fees for ICS. Importantly, Plaintiffs in this case are *only* challenging rates and fees pertaining to **intra**state calls. A companion case that has been pending in this Court since August 2014 deals exclusively with **inter**state calls.

The initial complaint in the instant case was filed on January 9, 2017. That complaint was superseded by an amended complaint on February 16. Securus filed its Motion to Dismiss and to Strike Class Allegations (Doc. 30) on March 6, and its Motion to Stay Discovery on April 12. Both motions have been fully briefed and are now ripe for decision.

## II. DISCUSSION

In their briefing on these motions, the parties have extensively discussed a wide variety of issues. For reasons of efficiency and logical priority, this Opinion and Order does not address those issues is the same sequence they were addressed by the parties. Furthermore, this Opinion and Order does not reach all of the issues raised by the parties,

2

because many of those issues are mooted by this Court's ruling *infra* on the issue of personal jurisdiction.

The Court begins its analysis with a discussion of whether it may exercise personal jurisdiction with respect to the claims brought by Plaintiffs Miller and Velazquez. Concluding that it may not, it then turns to the various issues implicated by Plaintiff Antoon's claims. Finally, after resolving those issues, this Opinion and Order takes up Securus's Motion to Stay.

### A. Personal jurisdiction with respect to Plaintiffs Miller and Velazquez

Securus does not dispute that this Court may exercise personal jurisdiction over it with respect to Plaintiff Antoon's claims, which concern facts alleged to have occurred within the state of Arkansas. However, Securus contends that this Court may *not* exercise personal jurisdiction over it with respect to the claims brought by Plaintiffs Miller and Velazquez.

#### 1. Legal standard

"To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). However, the plaintiff in question bears the burden of proving sufficient facts to support a prima facie showing of personal jurisdiction. *Wells Dairy*, 607 F.3d at 518. "The plaintiff's prima facie

3

showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

The Arkansas long-arm statute authorizes the exercise of personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101. Therefore, the only question here is whether the exercise of personal jurisdiction over Securus is constitutionally permissible. The Due Process Clause allows courts to exercise personal jurisdiction only when a defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This standard "presaged the development of two categories of personal jurisdiction": general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

General jurisdiction allows a court to hear "any and all claims" against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). In the case of a defendant corporation, the Due Process Clause permits a court to exercise general jurisdiction only when the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (quotation omitted). "The place of incorporation and principal place of business" are the "paradigm bases for general jurisdiction" over a corporation. *Daimler*, 134 S. Ct. at 760 (alteration and quotation omitted).

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*,

4

131 S. Ct. at 2851 (alteration and quotation omitted). Its exercise is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation omitted).

The Eighth Circuit has crafted a five-part test to help the district courts determine whether a defendant has minimum contacts such that a suit does not offend traditional notions of fair play and substantial justice: (i) the nature and quality of contacts with the forum state; (ii) the quantity of such contacts; (iii) the relation of the cause of action to the contacts; (iv) the interest of the forum state in providing a forum for its residents; and (v) the convenience of the parties. *See Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The last two factors are of secondary importance, *id.*, and the third factor applies only in the specific jurisdiction context. *See Wilcosky v. Swift Transp. Corp.*, 2008 WL 2562959, *2 (W.D. Ark. June 24, 2008).

### 2. General jurisdiction analysis

As this Court has repeatedly observed over the last couple of years, "in recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for general jurisdiction." *Sioux Transp., Inc. v. XPO Logistics, Inc.*, 2015 WL 9412930, at *3 (W.D. Ark. Dec. 22, 2015) (quoting *Merryman v. JPMorgan Chase Bank, N.A.*, 2015 WL 7308666, at *2 (W.D. Ark. Nov. 19, 2015)). The Supreme Court cases of *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler AG v.*

*Bauman*, 134 S. Ct. 746 (2014), identified "the place of incorporation and principal place of business" as "paradigm bases for general jurisdiction" with respect to a corporation." *See Daimler*, 134 S. Ct. at 760 (internal alterations omitted). And although the Supreme Court has been careful not to hold that those are necessarily the *only* two types of forum in which general jurisdiction may be exercised over a corporate defendant, *see id.*, it has also explicitly rejected the request for it to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping," *see id.* at 761.

Here, Plaintiffs argue that Securus has consented to general jurisdiction in Arkansas through the combination of not only doing business in this state but also designating an agent for service of process in Arkansas. This line of argument might have some persuasive force in forum states whose registration statutes can be naturally and fairly read as conditioning a corporation's registration upon consent to general jurisdiction within that state. *See, e.g., Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572, 586–88 (D. Del. 2015); *Otsuka Pharm. Co., Ltd. v. Mylan Inc.*, 106 F. Supp. 3d 456, 469–70 (D.N.J. 2015). But Arkansas is not such a state.

The Arkansas Code prohibits foreign corporations from transacting business in this state without first registering with the Arkansas Secretary of State, *see* Ark. Code Ann. § 4-27-1501(a), and such registration must include the appointment of a registered agent for service of process, *see* Ark. Code Ann. §§ 4-27-1503(a)(5), 4-20-105(a). The logical implication of Plaintiffs' theory, then, is that every single foreign corporation who lawfully conducts business within the state of Arkansas consents thereby to the exercise of general jurisdiction over it by the courts of this state. But the Arkansas Code explicitly

6

provides that "[t]he appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state." Ark. Code Ann. § 4-20-115. And while technically Plaintiffs' argument does not depend on the existence of a registered agent "by itself" but also on the conducting of business within this state, the Court believes the practical effect of Plaintiffs' argument would be to nullify § 4-20-115's express jurisdictional limitation. The Court does not believe an exception that is so large as to swallow the rule here would be a natural or fair reading of these statutes.

Ultimately, for the exercise of general jurisdiction over a corporate defendant to be proper, a plaintiff must show not merely that the defendant does a substantial amount of business in the forum state, but that its ties to the forum state are so substantial that the forum state is "one in which the corporation is fairly regarded as *at home*." *Goodyear*, 564 U.S. at 924 (emphasis added). The Plaintiffs have made no showing here that Securus is any more "at home" in Arkansas than in any other state where it conducts a substantial amount of business. Therefore, this Court concludes it may not exercise general jurisdiction over Securus. Accordingly, it turns to the matter of specific jurisdiction.

### 3. Specific jurisdiction analysis

As already discussed above, Plaintiff Miller brings claims challenging rates paid to Securus for *intra*state calls within the state of Georgia, and Plaintiff Velazquez brings claims challenging rates paid to Securus for *intra*state calls within the state of Illinois. Significantly, neither of these two plaintiffs has pointed to even a single event occurring within the state of Arkansas that would form a basis or otherwise help give rise to the

claims they are asserting against Securus in this case. Rather, the events giving rise to their claims appear to have occurred entirely within the states of Georgia and Illinois, as well as Securus's corporate offices—perhaps where it is incorporated in Texas, but in any event, certainly not in Arkansas. Furthermore, Plaintiffs have not contended, and the Court cannot imagine how it could be, that the state of Arkansas has any interest at all in regulating the rates that Securus charges for purely *intra*state calls within the states of Georgia and Illinois.

All of this matters because, as the Court has already observed, the exercise of specific jurisdiction over a defendant is based upon an "activity or an occurrence that *takes place in the forum State* and is therefore *subject to the State's regulation.*" *Goodyear*, 564 U.S. at 919 (emphasis added). "Specific jurisdiction can *only* be found if the controversy *is related to or arises out of* the defendant's contacts with the forum state. *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (emphasis added, internal quotation marks omitted). Lacking any plausible argument that their claims "arise out of" Securus's contacts with Arkansas, Plaintiffs Miller and Velazquez seize upon the "related to" prong. Specifically, they argue that since Plaintiff *Antoon*'s claims indisputably *do* arise out of Securus's contacts with Arkansas, and since all three plaintiffs allege that Securus is unjustly recouping site commissions from them pursuant to a nationwide policy and practice, then the claims of Plaintiff Antoon are sufficiently "related to" the claims of Plaintiffs Miller and Velazquez as to satisfy the requirements of specific jurisdiction with respect to the latter two plaintiffs' claims.

The Court believes Plaintiffs' theory stretches the "related to" prong too far. Unlike with general jurisdiction, the determination of whether specific personal jurisdiction exists

is fundamentally a *claim-specific* inquiry; accordingly, specific jurisdiction must exist with respect to each separate claim. *See, e.g., Zumbro, Inc. v. Cal. Natural Prods.*, 861 F. Supp. 773, 779 (D. Minn 1994) ("Because specific jurisdiction requires a nexus between the defendant's contacts with the forum state and the subject matter of Zumbro's claims in this litigation, it is necessary to address each of Zumbro's claims individually."); *see also Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999) ("We commend the lower court's decision to analyze the contract and tort claims discretely. Questions of specific jurisdiction are always tied to the particular claims asserted."); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination [of whether specific jurisdiction may be exercised] is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by Remick does not necessarily mean that it has personal jurisdiction over that same defendant as to Remick's other claims."); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) ("Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause. Thus, if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim."); 5B Wright & Miller, Federal Practice and Procedure § 1351 n.30, p. 299 ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."). And when conducting this claim-specific inquiry, the Court's task is to determine whether the

*claim* in question is related to Securus's *contacts with Arkansas*. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) ("[O]ur inquiry is limited to the question of whether any of Morris's dismissed claims arise out of or are related to the Minnesota contacts of the defendants, *i.e.*, whether the defendants are properly subject in this case to specific jurisdiction.").

Applying the Eighth Circuit's five-factor test to the claims brought by Plaintiffs Miller and Velazquez yields identical results for each of those claims. Whatever the quality and quantity of Securus's contacts with Arkansas (factors one and two), those contacts with Arkansas do not relate at all to Miller's and Velazquez's claims (factor three); indeed, their claims would be no different even if Securus never had any contacts with Arkansas at all. Arkansas's interest in providing a forum for its residents (factor four) is irrelevant to the claims of Miller and Velazquez, because neither of them is a resident of Arkansas. *See* Doc. 23, ¶¶ 4–5. And the convenience of the parties (factor five) does not weigh strongly in either direction; while Plaintiffs might find it more convenient to streamline motion and discovery practice by consolidating all of their claims into one lawsuit, Securus might find it more convenient to litigate each separate plaintiff's claims in the geographic forum where the harms allegedly occurred, before a court that is especially familiar with the particular state's laws that govern that particular plaintiff's claims. At any rate, the Court finds the third factor to be by far the most important factor for purposes of its analysis here, and finds further that the third factor weighs so lopsidedly against the exercise of specific jurisdiction as to be outcome-determinative in this case. *Cf. Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 746 n.4 (8th Cir. 2011) (explaining that the five-factor test "is not to be mechanically applied").

In summary, with respect to the claims brought by Plaintiffs Miller and Velazquez, Securus's relevant conduct occurred entirely outside the state of Arkansas, precluding the exercise of specific jurisdiction over Securus with respect to those claims. *Cf. Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014) ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."). Therefore, the Court must dismiss those claims without prejudice.

### B. Plaintiff Antoon's claims

The Court turns now to the various issues that have been raised regarding the claims of Plaintiff Antoon, who is the sole remaining plaintiff. Securus argues that these claims should be dismissed, for a variety of reasons, under Fed. R. Civ. P. 12(b)(6).

#### 1. Legal standard

To survive a Rule 12(b)(6) motion to dismiss, a pleading must provide "a short and plain statement of the claim showing that [the claimant] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of the complaint's factual allegations as true, and construe the pleadings in the light most favorable to Plaintiff Antoon, drawing all reasonable inferences in his favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

11

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

### 2. Issues regarding Plaintiff Antoon's claims generally

First, Securus argues that it is entitled to derivative sovereign immunity from all of Plaintiff Antoon's claims, because Securus paid site commissions to correctional facilities pursuant to public contracts. The Court rejects this argument here for the same reasons it rejected this argument in the related case of *Mojica v. Securus Techs., Inc.*, 2016 WL 7650654, at *4 (W.D. Ark. Nov. 29, 2016). Specifically, nothing in the record (much less in the complaint) supports a conclusion that when Securus engaged in the conduct of which Plaintiff Antoon complains, it was a state actor or acting under the direct supervision of a governmental agency to carry out decisions made solely by that agency. *See Smith v. Rogers Grp., Inc.*, 348 Ark. 241, 250–51 (2002).

Next, Securus argues that the Arkansas Public Service Commission ("APSC") has sole, primary jurisdiction over disputes between public utility companies and their customers. Relatedly, Securus contends that Plaintiff Antoon's claims are barred by the filed-rate doctrine, "which is essentially a doctrine that bars courts from adjudicating the reasonableness of a rate that has already been approved—or in some circumstances even merely noticed—by an agency with regulatory authority over the challenged rate.

12

*Jacobs v. Global Tel\*Link Corp.*, 2016 WL 5953128, at \*4 (W.D. Ark. May 17, 2016). But Plaintiff Antoon alleges that Securus "uses an internet protocol format to" provide inmate calling services, "commonly referred to as Voice over Internet Protocol," (Doc. 23, ¶ 12 n.3), and as this Court previously observed in *Jacobs*, "Ark. Code Ann. § 23-17-411(g)(1) states that with some exceptions, 'the [APSC] does not have jurisdiction to regulate Voice over Internet Protocol [("VOIP")] services . . . or . . . providers.'" *See Jacobs*, 2016 WL 5953128, at \*5 (W.D. Ark. May 17, 2016) (alterations in original). And also as in *Jacobs*, to the extent the parties dispute whether Securus provides VOIP services or the extent to which the filed-rate doctrine will limit the amount of damages Plaintiff Antoon may recover, the resolution of that dispute "will turn on discoverable facts and cannot properly be determined on a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.*

Finally, Securus asks the Court to strike the class allegations of persons who paid for intrastate calls while in Delaware, Hawaii, and Vermont, because it is impossible for any such persons to exist, given that "Securus does not serve a single jail in Delaware, Hawaii, or Vermont." (Doc. 30-1, p. 42). Plaintiff Antoon does not oppose this request. (Doc. 35, p. 20 n.4). Accordingly, it will be granted. Having addressed all of the issues pertaining to Plaintiff Antoon's claims generally, the Court will now address issues that pertain to specifically to only one or the other of Plaintiff Antoon's claims.

### 3. Issues regarding Plaintiff Antoon's claim under the ADTPA

Securus argues that Plaintiff Antoon's claim under the ADTPA should be dismissed for three reasons. First, Securus argues that because the challenged rates are regulated by the APSC, the ADTPA's "safe harbor" prohibits him from challenging them under the ADTPA. *See* Ark. Code Ann. § 4-88-101(3). But as this Court ruled in *Jacobs*, "where

the APSC's regulatory authority is implicated, the reach of the ADTPA's safe-harbor provision in this case is coextensive with that of the Arkansas filed-rate doctrine." *Jacobs*, 2016 WL 5953128, at *6 (W.D. Ark. May 17, 2016). Thus, since a factual dispute remains concerning the reach of the filed-rate doctrine in this case, a factual dispute likewise remains about the reach of the ADTPA's safe-harbor in this case.

Next, Securus argues that Plaintiff Antoon fails to plead his ADTPA claim with the particularity required by Rule 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Court rejects that argument here for the same reason it rejected it in *Jacobs*, which is while that Rule 9(b)'s heightened pleading standard applies to claims under the ADTPA that sound in fraud, it does not apply to ADTPA claims like the instant one which are premised on conduct like usury or the improper exploitation of economic leverage. *See Jacobs*, 2016 WL 5953128, at *7 (W.D. Ark. May 17, 2016).

Finally, Securus argues that even under the ordinary and more relaxed pleading standard of Rule 8, Plaintiff Antoon fails to state a claim under either Ark. Code Ann. §§ 4-88-107(a)(8) or (a)(10) of the ADTPA. The Court disagrees. Construing the allegations in the complaint in the light most favorable to Plaintiff Antoon, he has alleged that Securus obtained exclusive contracts to provide ICS at correctional facilities where he has been incarcerated, and then exploited those monopolies by charging him oppressive rates for ICS. Regarding § 4-88-107(a)(10), which prohibits "[e]ngaging in any other unconscionable . . . act or practice in business," the Court would simply reiterate its observation in *Jacobs* that "the Arkansas Supreme Court has held that" this subsection "may be violated by charging usurious interest rates, *State ex rel. Bryant v. R & A Inv.*

14

*Co., Inc.*, 336 Ark. 289, 296–97 (1999), or by improperly exploiting economic leverage resulting from exclusive-provider contracts, *see Baptist Health v. Murphy*, 365 Ark. 115, 128–29 (2006)." *See Jacobs*, 2016 WL 5953128, at *7 (W.D. Ark. May 17, 2016).

As for § 4-88-107(a)(8), which prohibits "[k]nowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of: (A) [p]hysical infirmity; (B) [i]gnorance; (C) [i]lliteracy; (D) [i]nability to understand the language of the agreement; or (E) [a] similar factor," Securus argues that incarceration is not the sort of incapacitating condition that is contemplated by that subsection (E). Intuitively and at first blush, the Court believes there are reasonable arguments to be advanced in either direction on this point, and it is reluctant to establish any law of the case on this issue at this time. Neither party has presented this Court with any case containing analogous facts or reasoning; the only case on which Securus relies is one that this Court considers to be completely inapposite, as it involves the *denial* of a motion for *summary judgment* on a § 4-88-107(a)(8) claim, where the defendants were alleged to have lied to the plaintiff about the efficacy of a particular breast-cancer treatment. *See Westphal v. Lase Med Inc.*, 2011 WL 1374729, at *4 (E.D. Ark. Apr. 11, 2011). At this time, the Court can only say that Plaintiff Antoon has given Securus "fair notice of what [his § 4-88-107(a)(8)] claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Since the Court is already permitting Plaintiff Antoon to proceed on his claim under § 4-88-107(a)(10), the Court sees no harm or prejudice to Securus in permitting him also to conduct what the Court imagines will likely be almost entirely overlapping discovery on his § 4-88-107(a)(8) claim, and permitting Securus to re-raise this argument in a motion for summary judgment on

15

the basis of a complete factual record, supplemented by more robust citation to legal authority. Accordingly, Securus's Motion will be denied with respect to Plaintiff Antoon's ADTPA claim.

### 4. Issues regarding Plaintiff Antoon's claim for unjust enrichment

Turning now to Plaintiff Antoon's claim for unjust enrichment, Securus argues it should be dismissed because Securus did not retain any benefit that he paid to them. Rather, Securus contends that it paid the site commissions it received from Plaintiff Antoon to the correctional facilities, pursuant to its contracts with those facilities. Securus made this identical argument in the companion case of *Mojica*, and the Court rejects it here for the same reasons it did there:

> While it is certainly true that Plaintiff[] must prove that Securus received, retained, or accepted a benefit [that] Plaintiff[] conferred on it in order to prevail on [his] claim for unjust enrichment, *see Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101 (2005); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005), "retain" in this context does not mean "retain forever and never spend or trade for one's own benefit." Th[e] cases Securus relies on for this argument do not stand for anything more than that a party is neither unjustly enriched nor entitled to recover unjust enrichment by merely acting as a formal conduit for conveyance of a benefit to a third party. *See Epps Aircraft, Inc. v. Exxon Corp.*, 859 F. Supp. 533, 536 (M.D. Ala. 1993); *Gannon Int'l Ltd. v. Blocker*, 2011 WL 3438886, at *4 (E.D. Mo. Aug. 5, 2011).

*Mojica v. Securus Techs., Inc.*, 2016 WL 7650654, at *3 (W.D. Ark. Nov. 29, 2016). Accordingly, Securus's Motion will be denied with respect to Plaintiff Antoon's claim for unjust enrichment.[1]

---

[1] Securus also argues that because "Arkansas courts dismiss unjust enrichment claims where defendants have not violated the law or public policy," and because Plaintiff Antoon's "statutory claim fails due to the [A]DTPA's safe harbor and Securus's status as a regulated common carrier, his unjust enrichment claim must be dismissed." (Doc. 30-

## C. Securus's Motion for Stay of Discovery (Doc. 39)

Finally, Securus asks this Court to stay discovery in this case pending resolution of the Motion to Dismiss discussed *supra* or the review of the *Second Inmate Rate Order* currently pending before the D.C. Circuit, in the matter of *Global Tel\*Link et al. v. FCC, et al.*, Case No. 15-1461, whichever is resolved later. The power to stay proceedings is committed to this Court's discretion, being "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

This Opinion and Order completely resolves Securus's Motion to Dismiss, so that basis for a stay is gone. As for the case pending before the D.C. Circuit, the Court understands Securus's argument to be that one of the issues being litigated in that case is whether the FCC has authority to regulate intrastate rates (which is the type of rate being challenged in the instant case), and that the D.C. Circuit's ruling on that issue could have a bearing on how the claims will proceed in the instant case. The Court does not find this reason persuasive, in part because on January 31 and February 2 of this year, the FCC and the DOJ, respectively, abandoned the argument "that the [FCC] has the authority to cap intrastate rates for inmate calling services." *See Global Tel\*Link et al. v. FCC, et al.*, D.C. Cir., Case No. 15-1461, Doc. 1658521, p. 1 and Doc. 1658988, p. 1. As Securus acknowledges, the intrastate rate caps set in the *Second Inmate Rate Order* are

---

1, p. 41). This argument is foreclosed for now by this Court's rulings *supra* regarding the filed-rate doctrine and the ADTPA safe harbor.

17

presently stayed pending the outcome of that litigation, and if the D.C. Circuit were to affirm them, those rates caps would be only prospective, not retroactive. *See* Doc. 39-1, p. 6. But even if the D.C. Circuit were to affirm those intrastate rate caps, and even if the FCC were to leave those rate caps in place following such affirmation by the D.C. Circuit (despite a majority of the FCC, as presently constituted, believing it should not be regulating intrastate rates in the first place, *see* D.C. Cir. Case No. 15-1461, Doc. 1658521, p. 1), Securus has not made any showing of how the approval of purely prospective rate caps would render discovery conducted prior to that point wasteful, unduly burdensome, or otherwise prejudicial to Securus. Accordingly, Securus's Motion for Stay of Discovery will be denied.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Securus Technologies, Inc.'s Motion to Dismiss and Motion to Strike Class Allegations (Doc. 30) is **GRANTED IN PART AND DENIED IN PART** as follows: the class allegations of persons who paid for intrastate calls while in Delaware, Hawaii, and Vermont are **STRICKEN**, and the claims of Plaintiffs Shalin Miller and Sharon Velazquez are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction, but the claims of Plaintiff Patrick Antoon, Jr. survive.

**IT IS FURTHER ORDERED** that Defendant Securus Technologies, Inc.'s Motion for Stay of Discovery (Doc. 39) is **DENIED**.

**IT IS SO ORDERED** on this 15th day of May, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE